UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | * | CASE NO. 19-12205 |
| ACADIAN CYPRESS & HARDWOODS, INC. | * | CHAPTER 11 |
| DEBTOR | * | SECTION "B" |

**DEBTOR'S MOTION FOR INTERIM AND FINAL ORDERS (1) AUTHORIZING AND APPROVING DEBTOR'S POST-PETITION FINANCING AND USE OF CASH COLLATERAL; (2) GRANTING SECURITY INTERESTS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS; AND (3) MODIFYING AUTOMATIC STAY PURSUANT TO 11 U.S.C. §§ 105, 362, 363 AND 364 AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 2002 AND 4001**

**NOW INTO COURT**, comes Acadian Cypress & Hardwoods, Inc. ("Debtor"), through its undersigned counsel, and files this Motion for Interim and Final Orders (1) Authorizing and Approving Debtor's Post-Petition Financing and Use of Cash Collateral; (2) Granting Security Interests and Providing Superpriority Administrative Expense Status; and (3) Modifying Automatic Stay Pursuant to 11 U.S.C. §§ 105, 362, 363 and 364 and Federal Rules of Bankruptcy Procedure 2002 and 4001.

**SUMMARY**

1.

In this Motion, the Debtor requests authority to enter into debtor in possession financing (the "DIP Loan") for purposes of obtaining additional inventory and meeting ongoing operating expenses. The proposed debtor-in-possession financing lender is Amped Investments, LLC, a Texas limited liability company ("Lender"). A member of the Lender is an Insider of the Debtor. The proposed basic terms for such financing are set forth in the chart outlined herein. See, ¶ 11.

{00368930-8}

1

**LEGAL STANDARD**

2.

Post-petition debtor-in-possession financing is governed by Section 364 of the Bankruptcy Code. Courts may approve post-petition financing on a secured, super-priority administrative basis under Section 364(c) of the Bankruptcy Code, and commonly do so when the financing is necessary for the reorganization of the debtor.

3.

In addition to Section 364, to the extent necessary, this Motion is made under Sections 105, 362, and 363 of the Bankruptcy Code and under Bankruptcy Rules 2002 and 4001.

**FACTUAL BACKGROUND**

4.

The Debtor operates a mill and lumber business in Louisiana and Texas. The Debtor's inventory and accounts receivables are subject to a security interest in favor of Home Bank. The Debtor does not have access to unencumbered cash and needs liquidity to acquire additional inventory, create additional accounts receivable and pay operating expenses such as obligations to employees, post-petition vendors and utilities. The Debtor's estate will suffer immediate and irreparable harm if the Debtor does not obtain immediate access to the proposed debtor-in-possession financing and use of cash collateral.

5.

The Debtor sells to its customers processed wood products, high end millwork and other goods. The Debtor uses its inventory to turn into finished goods for sale to customers. Due to the work performed by the Debtor and its employees, the inventory is turned into a receivable of one hundred forty percent (140%) of the cost of the inventory. If the existing inventory were liquidated,

2

it would bring at sale less than forty percent (40%) of cost and only a percentage of the outstanding receivables would be collected.

6.

Home Bank asserts a lien on the Debtor's equipment and some or all of the Debtor's inventory pursuant to a recorded UCC.

7.

Lender is willing to make the DIP Loan to the Debtor in the amount of $750,000.00, of which $250,000.00 is needed immediately to purchase inventory and meet operating costs. The terms are six and a half percent (6.5%) interest during the pendency of the chapter 11 case with the DIP Loan due on the Effective Date of a Plan of Reorganization. If the Lender acquires the equity interests in the Debtor pursuant to a confirmed Plan, the Lender will only require the lesser of $325,000.00 or forty percent (40%) of the DIP Loan outstanding on the Effective Date to be paid on the Effective Date of a Plan, which amount will be applied first toward retiring that portion of the DIP Loan funded through contributions to the DIP Lender by certain of its non-insider members, and will provide a post-confirmation revolver for a one (1) year term post confirmation. The lien requested by the Lender is a first lien on inventory, cash and receivables and a superpriority lien under the Bankruptcy Code. The equipment and real estate on which Home Bank has a lien will not serve as security for the DIP Loan. Home Bank will, as a condition of the DIP Loan, subordinate their liens on the Debtor's cash, accounts receivable and inventory in exchange for the Debtor's agreeing to maintain a value at cost of inventory, cash and accounts receivable equal to $400,000.00 plus the amount of the DIP Loan advanced.

8.

As of the filing date most of the inventory on which Home Bank possessed a lien had been in the Debtor's inventory for a period in excess of 90 days and the turn time on such inventory was in excess of 240 days. The Debtor has $554,552 of inventory at cost and $482,588.00 of it is over 90 days. If sold today, the remaining inventory would bring less than $200,000.00. The receivable ageing as of the filing is the following:

Louisiana

| | |
|---|---|
| Less than 30 days | 123,794.00 (70% collectable) |
| 31-90 days | 134,389.00 (40% collectable) |
| Over 90 days | 182,281.00 (20% collectable) |

Texas

| | |
|---|---|
| Less than 30 days | 21,892.00 (70% collectable) |
| 31-90 days | 17,530.00 (40% collectable) |
| Over 90 days | 3,371.00 (20% collectable) |

## **NEED FOR DEBTOR-IN-POSSESSION FINANCING**

9.

Pursuant to Section 364(c) of the Bankruptcy Code, the Debtor requests that the Court authorize the secured, administrative superpriority DIP Loan. The Debtor has determined that it is unable to obtain credit in another manner, or on any terms superior to those in the DIP Loan. The Debtor submits that entering into the DIP Loan is necessary to fund its post-petition operating expenses and allow the Debtor to successfully reorganize.

10.

The proceeds of the DIP Loan would be used, in part, to preserve the value of estate assets and limit claims against the estate.

## TERMS OF PROPOSED DIP LOAN

11.

Material terms of the proposed financing are outlined in the chart below:

| | |
|---|---|
| DIP Collateral: | Inventory, cash and accounts receivable of the Debtor. |
| Amount of DIP Loan and Use of Proceeds: | Debtor-in-possession loan ("DIP Loan") in the total maximum amount of $750,000.00, for purchase of inventory, payment of operating expenses and other costs. |
| DIP Obligations: | DIP obligations (the "DIP Obligations") to be repaid under the DIP Loan include: all unpaid principal and interest on the DIP Loan, and fees as described below. |
| DIP Loan Interest and Fees: | Interest rate of six and a half percent (6.5%) per annum, with the rate on matured, unpaid amounts being the maximum rate of interest permitted by law (when taken together with any other charges or fees which constitute interest). Borrower agrees to pay all actual and reasonable out-of-pocket fees and expenses incurred by DIP Lender in connection with the DIP Loan, including attorneys' fees and costs, on the Effective Date of a Plan of Reorganization. |
| Closing or Commitment Fees: | None |

{00368930-8}

| | |
|---|---|
| <u>DIP Loan Maturity Date:</u> | The earliest to occur of the following (such date being the "<u>Maturity Date</u>"):<br><br>(1) February 1, 2020;<br>(2) Acceleration of the DIP Obligations under the DIP Loan due to the occurrence and continuation of an Event of Default;<br>(3) the "effective date" of any plan of reorganization with respect to the Borrower confirmed by the Bankruptcy Court; or<br>(4) the date of execution by the Borrower of any agreement (including any letter of intent) for the sale to any third party of all or any material portion of the property or assets of the Borrower.<br><br>On the Maturity Date, the commitment of the DIP Lender to make the DIP Loan or any further advances thereunder as set forth in the DIP Loan Agreement (the "<u>Commitment</u>") shall be terminated, and the DIP Lender shall have no further obligation to provide financing, pursuant to the DIP Loan or otherwise. |
| <u>DIP Loan Payments:</u> | All unpaid principal and interest on the DIP Loan, as well as all other obligations of every nature of Borrower owed to the DIP Lender under the DIP Loan Agreement (the "<u>DIP Obligations</u>"), shall be due and payable, in full on the Maturity Date.<br><br>Borrower may voluntarily prepay the DIP Loan in whole or in part at any time without penalty.<br><br>In any event, the Borrower shall be required to permanently repay the DIP Loan (with a corresponding permanent commitment reduction), with the proceeds of sale of any assets of Borrower during the term of the DIP Loan. |

| | |
|---|---|
| Super-Priority Claim and DIP Lender Lien: | Except as agreed with respect to the Carve Out (as defined below)[1], all obligations and liabilities of the Borrower to the DIP Lender pursuant to the DIP Loan, including all accrued interest, fees, costs and expenses, shall constitute an allowed Super-priority administrative expense claim against the Borrower pursuant to Section 364(c)(1) of the Bankruptcy Code, having priority over all administrative expenses of the kind specified in or arising under any sections of the Bankruptcy Code (including, without limitation, Sections 105, 326, 328, 330, 331, 364(c)(1), 503(b), 506(c), 507, 546(c), 726, 1113 and 1114 thereof). (the "Super-Priority Claim").<br><br>In addition, DIP Lender shall be granted a lien and security interest ("DIP Lender Lien") securing all DIP Obligations on all inventory, accounts receivable and cash (the "DIP Lender Collateral"), subject only to the Carve-Out. The DIP Lender Lien shall be deemed effective and perfected as of the date of the filing of the bankruptcy and will be a first lien in full force and effect against all inventory, accounts receivable and cash regardless of whether such collateral was acquired pre- or post-petition, and no further notice or act will be required to effect such perfection. Borrower shall take such actions as may be required by DIP Lender to create and perfect such liens and security interests in the DIP Lender Collateral.<br><br>The "Carve Out" hereunder means fees for estate professionals and US Trustee up to $25,000.00 after Lender has first been paid $350,000.00. |
| Documentation: | The Debtor and DIP Lender may execute definitive documentation including a DIP Loan Agreement ("DIP Loan Agreement"). |
| Conditions Precedent to Closing: | The closing of the DIP Loan, and the initial funding thereunder, shall be subject to conditions precedent customary and appropriate for financings of this type, including but not limited to:<br><br>(1) receipt by the DIP Lender of a duly executed DIP Loan Agreement and any necessary ancillary loan and security documents, in form and substance satisfactory to the DIP Lender and the Borrower; and<br>(2) entry by the Bankruptcy Court of an interim and final order ("Final Order") which shall approve the DIP Loan and DIP Loan Agreement, and which shall be in form and substance satisfactory to the DIP Lender, and with such prior notice to the necessary parties as required by Bankruptcy Rule 4001 or otherwise. |

---

[1] The Carve Out will be limited to amounts set forth in an agreed to budget which accrued prior to the date of a notice of an Event of Default under the DIP Loan and remain unpaid.

{00368930-8}

7

| | |
|---|---|
| <u>Events of Default:</u> | "Events of Default," will include but will not be limited to:<br>(1) Failure to repay the DIP Loan, or any installment payment, by the Maturity Date;<br>(2) Dissolution, liquidation, or conversion of the Bankruptcy Case to Chapter 7;<br>(3) Reversal, vacation or stay of the Order granting approval for the DIP Loan;<br>(4) Failure by the Debtor to comply with any material provision of the Order granting approval of the DIP Loan;<br>(5) Entry of an order confirming a plan of reorganization that does not: (i) contain a provision for payment in full of all outstanding DIP Obligations on or before the effective date of such plan; and (ii) provide for the continuation of the DIP Lender Lien until payment in full of the DIP Loan;<br>(6) Entry of an order: (i) appointing a trustee under Section 1104; (ii) appointing an examiner with enlarged powers (beyond those set forth in Section 1106(a)(3) and (4) of the Bankruptcy Code) relating to the operation of the business under Section 1106(b) of the Bankruptcy Code; (iv) revoking, reversing, staying, vacating or rescinding any provision of the Order granting this Motion; (v) modifying, supplementing or amending any provision of the Order granting this Motion without the consent of the DIP Lender; (vi) permitting any administrative expense, other debtor-in-possession financing or any claim except Home Bank's junior secured claim on the DIP Lender Collateral (now existing or hereafter arising, of any kind or nature whatsoever) to have administrative priority over any administrative expense, which is equal or superior in priority to the Super-Priority Claim of the DIP Lender, except in respect of the Carve-Out; (vii) granting or permitting the grant of a lien on the DIP Lender Collateral other than the junior lien of Home Bank permitted under the DIP Loan Agreement; and/or (viii) dismissing the Bankruptcy Case which dismissal does not contain a provision for termination of the DIP Lender's Commitment and immediate payment in full in cash of all DIP Obligations upon such dismissal;<br>(7) Entry of an order granting relief from the automatic stay to any third-party holder or holders of any liens on DIP Lender Collateral to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on the DIP Lender Collateral;<br>(8) Any material provision of the Order approving the DIP Loan or the DIP Loan Agreement ceases to be valid or binding or enforceable against the Debtor;<br>(9) The Debtor seeks to, or supports (whether by way of motion or other pleadings filed with the Bankruptcy Court) any other party's motion to: (i) disallow in whole or in part any of the |

| | |
|---|---|
| | DIP Obligations; or (ii) challenge the validity or enforceability of the DIP Lender Lien or security interests granted or confirmed in the DIP Loan Agreement or in this Order in favor of the DIP Lender; <br> (10) Entry of an order avoiding or requiring disgorgement by the DIP Lender of any amounts received in respect of the DIP Obligations; <br> (11) The Debtor executes an agreement (including any letter of intent) for the sale to any third party of all or any portion of the DIP Lender Collateral, or other material assets of the Debtor (the date of such execution being the date of such default); or <br> (12) The Debtor fails to meet the Budget attached hereto as Exhibit "A" allowing for a 10% variance in any one item. |
| <u>Remedies:</u> | The automatic stay with respect to the DIP Lender will lift upon entry of an interim order granting this Motion, so that the DIP Lender will not need to obtain such relief in an Event of Default or upon any other termination of Lender's obligations under the DIP Loan. |
| <u>Fees</u> | Origination Fee of two percent (2%) of the amount advanced and Termination fee of two percent (2%) of the amount advanced. Such fees shall be waived if the Lender acquired the equity in the Debtor pursuant to a Plan. |

12.

The Debtor requests that the Court enter an interim order as soon as practicable to allow the Debtor access to financing immediately to allow it to meet its obligations to vendors, employees, and service providers; and that the Court schedule a final hearing on the matter with notice to creditors.

13.

Notice of this pleading has been provided by e-mail, facsimile, or overnight delivery to: (a) the Debtor; (b) any official committees appointed in this case and its respective counsel; (c) the Office of United States Trustee; (d) the top 20 largest unsecured creditors of the Debtor until any official committee for unsecured creditors is formed; (e) the Internal Revenue Service, 1555 Poydras St., Ste. 220, New Orleans, Louisiana 70112; (f) the United States Attorney, Executive

{00368930-8}

9

Office for United States Attorneys, United States Department of Justice, 950 Pennsylvania Avenue, NW, Room 2242, Washington, DC 20530-0001; (g) the Attorney General of the United States, Matthew Whitaker, 950 Pennsylvania Avenue, NW, Washington, DC 20530-0001; (h) Home Bank c/o Ralph Edwards, 70963 Highway 59, Abita Springs, Louisiana 70420; (i) Clay J. Legros, Newman, Mathis, Brady & Spedale, 212 Veterans Blvd., Metairie, Louisiana 70005; (j) U.S. Small Business Administration, Headquarters, 409 3rd St., S.W., Washington DC 20416; (k) the U.S. Department of Agriculture, 1400 Independence Ave., S.W., Washington DC 20250; (l) American Bank & Trust, 1819 N. Columbia Street, Covington, Louisiana 70433; (m) Wells Fargo, 300 Tri-State International, Suite 400, 4th Floor, Lincolnshire, Illinois 60069; (n) Capital One Bank (Credit Card), 1680 Capital One Drive, McLean, Virginia 22102; (o) Stearns Bank, 7555 Dr. Martin Luther King Jr. Street North, St. Petersburg, Florida 33702; and (p) all parties who request notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure. In light of the nature of the relief requested, the Debtor submits that no further notice is required.

      **WHEREFORE**, for the foregoing reasons, Acadian Cypress & Hardwoods, Inc. respectfully requests that the Court grant its Motion for Interim and Final Orders (1) Authorizing and Approving Debtor's Post-Petition Financing; (2) Granting Security Interests and Providing Superpriority Administrative Expense Status; and (3) Modifying Automatic Stay Pursuant to 11 U.S.C. §§ 105, 362, 363 and 364 and Federal Rules Of Bankruptcy Procedure 2002 and 4001 and enter an interim order.

August 16, 2019

*/s/ Douglas S. Draper*
Douglas S. Draper, La Bar No. 5073
Leslie A. Collins, La Bar No. 14891
Greta M. Brouphy, La Bar No. 26216
Heller, Draper, Patrick, Horn & Manthey, L.L.C.
650 Poydras Street, Suite 2500
New Orleans, LA 70130-6103
Office: 504 299-3300/Fax: 504 299-3399
E-mail: ddraper@hellerdraper.com
E-mail: lcollins@hellerdraper.com
E-mail: gbrouphy@hellerdraper.com

*Proposed Attorneys for the Debtor*